UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEL MARIN,<br><br>                             Plaintiff,<br><br>v.<br><br>KRISTINE CATANO; ADELA<br>DE LA TORRE; VANESSA RUIZ; and<br>JOSEPH I. CASTRO, in their<br>official and personal capacities; and<br>SAN DIEGO STATE UNIVERSITY,<br><br>                             Defendants. | Case No.: 21-CV-1445 JLS (LL)<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*; (2) SCREENING AND DISMISSING PLAINTIFF'S COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2); AND (3) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>(ECF Nos. 1–3) |

      Presently before the Court are Plaintiff Mel Marin's Complaint ("Compl.," ECF No. 1); Motion to Proceed *in Forma Pauperis* ("IFP Mot.," ECF No. 2); and Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Mot.," ECF No. 3). Having carefully considered these filings and the applicable law, the Court **GRANTS** Plaintiff's IFP Motion, **DISMISSES** Plaintiff's Complaint **WITH LEAVE TO AMEND**, and **DENIES WITHOUT PREJUDICE** Plaintiff's TRO Motion.

1

# *IN FORMA PAUPERIS* MOTION

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). An action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). Although the statute does not specify the qualifications for proceeding IFP, the plaintiff's affidavit must allege poverty with some particularity. *Escobeda v. Applebees*, 787 F.3d 1226, 1234 (2015). Granting a plaintiff leave to proceed IFP may be proper, for example, when the affidavit demonstrates that paying court costs will result in a plaintiff's inability to afford the "necessities of life." *Id.* The affidavit, however, need not demonstrate that the plaintiff is destitute. *Id.*

Here, Plaintiff's IFP Motion establishes that he has an income of "about $750 a month in the nature of a pension based on prior military duty." IFP Mot. at 4; *see also* Application to Proceed in District Court Without Prepaying Fees or Costs ("Affidavit," ECF No. 2) at 1–2. Plaintiff reports having $165.00 in cash and owning a motor vehicle worth approximately $600. *See* Affidavit at 2–3. Plaintiff further indicates that he has two checking accounts and a savings account, although he does not provide balance information for those accounts. *See id.* at 2. Plaintiff's monthly expenses of $895.00 exceed his monthly income. *See id.* at 4–5. The Court therefore concludes that Plaintiff adequately has demonstrated that paying the $402 filing fee would result in his inability to afford the necessities of life. Accordingly, the Court **GRANTS** Plaintiff's IFP Motion.

/ / /

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)). The additional $52 administrative fee does not apply to persons granted leave to proceed *in forma pauperis*. *Id.*

**SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)**

## I. Standard of Review

Because Plaintiff is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2002) (per curiam) (holding 28 U.S.C. § 1915(e)(2) screening applies to non-prisoners proceeding IFP); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)). Under this statute, the Court *sua sponte* must dismiss a complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez*, 203 F.3d at 1126–27. "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Further, "[w]hile factual allegations are accepted as true, legal conclusions are not." *Hoagland v. Astrue*, No. 1:12-cv-00973-SMS, 2012 WL 2521753, at *3 (E.D. Cal. June 28, 2012) (citing *Iqbal*, 556 U.S. at 678). Courts cannot accept legal conclusions set forth

in a complaint if the plaintiff has not supported his contentions with facts. *Id.* (citing *Iqbal*, 556 U.S. at 679).

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.*

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.'" *Khoja*, 899 F.3d at 999 (quoting *Lee*, 250 F.3d at 689). "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.* (citing *Lee*, 250 F.3d at 689).

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431(7th Cir. 1993)). "'[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document' under *Ritchie*." *Khoja*, 899 F.3d at 1002 (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)). Nonetheless, a document may still form the basis of the plaintiff's claim where "the claim necessarily depend[s] on the[ document]." *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). "However, if the document merely

creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* When a document is incorporated by reference, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908; *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("The court may treat . . . a document [incorporated by reference] as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'") (citing *Ritchie*, 342 F.3d at 908). Nonetheless, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.

Courts have a duty to construe a *pro se* litigant's pleadings liberally. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The district court should grant leave to amend if it appears "at all possible that the plaintiff can correct the defect," unless the court determines that "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990)).

## II.     Plaintiff's Factual Allegations

Plaintiff alleges that he is a student at San Diego State University ("SDSU"). Compl. ¶ 1. Plaintiff claims that, "[o]n July 27, 2021 defendants created a rule that bars students from in-person instruction hereafter if the student cannot show proof of COVID vaccination even if the unvaccinated student wears a mask. Exhibit A is unassailable proof of it." *Id.* ¶ 3. He claims that this rule "bars students with medical conditions that caution against a vaccine, in violation of Section 504 of the Rehabilitation Act of 1973." *Id.* ¶ 5. Plaintiff is a disabled veteran with medical issues who is therefore barred from attending classes. *Id.* ¶ 6. Plaintiff further claims that the decision whether to get the vaccine is protected First Amendment expression, *id.* ¶ 7, and that the policy is counter to AB-86,
/ / /

which "*bars* any California school from denying in-person instruction to students who fail to provide proof of vaccination," *id.* ¶¶ 11–12 (emphasis in original).

Plaintiff additionally claims that SDSU faculty are "governed by a rule requiring teachers and staff to examine the academic preparation of each student before allowing him into upper division course work, and apprise him honestly of any risks. [SDSU] also ha[s] a duty to students, to train [its] faculty and supervise them to follow these college rules." *Id.* ¶ 46. Plaintiff claims SDSU failed to train its faculty according to this rule, and that faculty failed to abide by the rule. *Id.* ¶ 47. Plaintiff alleges that one of his teachers lied to him about the scope of material that would be covered and tested in a "viral class" in which Plaintiff enrolled "in order to add students and prevent drops before the drop deadline, to get paid more money." *Id.* ¶¶ 48–50. Plaintiff claims he missed the drop deadline as a result. *Id.* ¶ 56. Plaintiff also claims a second teacher misstated the difficulty of a biology class, and as a result he had to withdraw late from both classes "to avoid disaster that could ruin his 3.8 GPA in sciences, and by then it was too late to take other classes he needed to fill those gaps." *Id.* ¶ 58.

Plaintiff also asserts that one or more of Defendants retaliated against him for complaining in 2020 about his teacher's above-alleged fraud and the resultant delay in his education by, among other things, denying him an internship; falsely claiming he enrolled in a class in the spring of 2021 for which he allegedly failed to pay, causing a "hold" to be entered on his account to bar him from registering for additional classes; and refusing to allow Plaintiff to drop a chemistry class he was unable to complete due to SDSU's Covid-19 policies. *Id.* ¶ 62. Plaintiff infers from the fact that "[he] did not receive in the mail a refund of the tuition he paid for the lab class in 2020" that "it can only mean SDSU denied the request to drop the class late without a grade, and secretly denied the refund, and entered an 'F' for the chemistry lab class." *Id.* Plaintiff indicates that students were permitted in the spring of 2020 to withdraw from classes without adverse grades due to the Covid-19 pandemic despite the drops being past the drop deadline, but that he applied for special access to the lab for his chemistry class "because he was engaged in research with his

professor to find a cure for the COVID" and, as a result, was given an "incomplete" grade and was required to complete the coursework by May 2021. *Id.* ¶¶ 85–86. His request for lab access, however, later was denied because Plaintiff was not a Ph.D. candidate, and Plaintiff was not informed of a lift of the bar on his lab access until April 2021, at which point "it was impossible to do 6 months of lab work in the remaining month," causing Plaintiff to "petition[] to late drop . . . the chemistry class due to impossibility," which request Plaintiff again infers was denied. *Id.* ¶¶ 87–91. Finally, Plaintiff claims that, on August 4, 2021, he requested access to and a copy of all the SDSU records pertaining to him for the past three years, including e-mails, but that his request was denied on August 11, 2021. *Id.* ¶¶ 102–04.

Plaintiff asserts six claims: (1) declaratory judgment and injunction; (2) negligence (*res ipsa loquitur*); (3) negligence (*res ipsa loquitur* and common law); (4) retaliation in violation of the First and Fourteenth Amendments of the U.S. Constitution and the Civil Rights Act (the "CRA"); (5) denial of Equal Protection in violation of the Fourteenth Amendment and the CRA; and (6) violation of the California Information Practices Act of 1977. *See generally* Compl. The claims are asserted against SDSU; Kristine Catano, SDSU's Global Campus College Registrar; Adela de la Torre, the President of SDSU; Vanessa Ruiz, whose role at SDSU is not specified; and Joseph I. Castro, the Chancellor of the California State Colleges. *See* Compl. at 1; *id.* ¶ 2. Plaintiff sues Catano, de la Torre, Ruiz, and Castro (collectively, the "Individual Defendants") in both their official and personal capacities. *See id.* at 1.

### III. Analysis

#### A. Federal Claims

##### 1. Eleventh Amendment Immunity

As an initial matter, "the Eleventh Amendment bars suits against a state brought by its own citizens, whether the relief sought is money damages or an injunction." *Seater v. Cal. State Univ., Fullerton*, 48 F.3d 1228 (9th Cir. 1995) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788

F.2d 600, 603 (9th Cir. 1986)). "Moreover, agencies of the state, such as California state colleges and universities, are similarly immune from private damage actions or suits for injunctive relief brought in federal court pursuant to 42 U.S.C. § 1983." *Id.* (citing *Mitchell v. Los Angeles Community College Dist.,* 861 F.2d 198, 201 (9th Cir. 1988)). Here, "[b]ecause California has not waived its Eleventh Amendment immunity," SDSU is immune from suit; accordingly, to the extent Plaintiff seeks to bring federal claims against SDSU, they are frivolous and must be dismissed. *Id.* (citing *Atascadero State Hospital*, 473 U.S. at 241; *Mitchell*, 861 F.2d at 201; *Shaw*, 788 F.2d at 603–04; *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

As to the Individual Defendants, "[t]he Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity." *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (citing *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam)). "Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). Accordingly, to the extent Plaintiff attempts to bring federal claims against the Individual Defendants seeking monetary relief, he again fails to state a claim.

> 2. *Claim 1: Declaratory Judgment and Injunction*

Plaintiff's first claim is for "declaratory judgment and injunction (under the Declaratory Judgments Act and Civil Rights Act)." *See* Compl. at 2. However, both declaratory relief and injunctive relief are remedies rather than standalone claims. *See Kimball v. Flagstar Bank F.S.B.*, 881 F. Supp. 2d 1209, 1219–20 (S.D. Cal. 2012) (dismissing with prejudice claim for declaratory relief because "[d]eclaratory relief is not an independent cause of action, but instead a form of equitable relief") (citation omitted); *Jones v. ABN AMRO Mortg. Grp., Inc.*, 551 F. Supp. 2d 400, 406 (E.D. Pa. 2008) (similar), *aff'd*, 606 F.3d 119 (3d Cir. 2010); *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1205 (S.D. Cal. 2010) ("Injunctive relief, like damages, is

a remedy requested by the parties, not a separate cause of action.'" (quoting *Cox Commc'n PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002)). This alone merits dismissal of Plaintiff's first claim.

Even construing Plaintiff's first claim liberally, however, as attempting to bring a claim alleging that Defendants' Covid-19 policy violates various rights protected by the U.S. Constitution, *see* Compl. ¶¶ 20–23, the Court finds that Plaintiff fails to state a claim. The crux of Plaintiff's claim is that SDSU's Covid-19 policy absolutely bars Plaintiff and others from attending SDSU absent proof of vaccination. *Id.* ¶¶ 6–7. However, this fundamental premise is false. Given that Plaintiff submits as an exhibit to his Complaint a screenshot of an announcement on SDSU's Student Health Services website declaring "CSU to Require COVID-19 Vaccine for Fall 2021," *see* Compl. Ex. A, and that said policy forms the basis of Plaintiff's claim, *see id.* ¶¶ 3–9, the Court considers the policy to be incorporated by reference. The California State University COVID-19 Vaccination Interim Policy (the "Policy") clearly provides, however, that "[a] Student or Employee may be excused from the vaccine requirement in this policy . . . due to a medical (including mental health) condition for which an Approved Vaccine presents a significant risk of a serious adverse reaction." *See* Policy at II.F, *available at* https://calstate.policystat.com/policy/9779821/latest/?mkt_tok=MTI1LUJNUC0yMDMMAAAF-mKw0tIdFW_JykR8n7y5PLI7vXFeobL5FS_HfBYDXuy-QOYoZ4F9iB5DOadf1Ds1sFAZ6NrvIYwhQLaiSeedb9dHHDXQeGxHid5pouE9EtJP1pQ. Because the Policy does have exemptions potentially applicable to Plaintiff, Plaintiff fails to state a claim on the basis that he is necessarily harmed because he will not provide proof of vaccination.

Plaintiff's claim also hinges on Plaintiff's assertion that the Policy is illegal and conflicts with state law, namely AB-86. Compl. ¶¶ 11–16. Again, however, this is untrue. Once more, Plaintiff quotes from AB-86 and provides a citation to the bill, so the Court considers AB-86 incorporated by reference into the Complaint. By its plain language, AB-86, which added Article 8 to Chapter 1 of Part 19 of Division 1 of Title 1 of the California Education Code (titled "COVID-19 Reporting and Public Health Requirements"), applies

to public and private schools "maintaining kindergarten or any of grades 1 to 12, inclusive." *See* Cal. Educ. Code § 32090(a)(1). Thus, on its face, AB-86 does not apply to postsecondary institutions like SDSU. *See, e.g.*, *Karasek v. Regents of the Univ. of Cal.*, No. 15-CV-03717-WHO, 2015 WL 8527338, at *18–19 (N.D. Cal. Dec. 11, 2015) (rejecting argument that provision applied to postsecondary institution when definition of included institutions included "public or private preschool[s], elementary, or secondary school[s] or institution[s]"). While Plaintiff cites to *Brown v. Li* for the proposition that "laws protecting students in elementary schools apply to state colleges as well," Compl. ¶ 14 (citing 308 F.3d 939, 949 (9th Cir. 2002)), *Brown* is inapposite, as here, Plaintiff raises a straightforward issue of statutory construction, while *Brown* dealt with an issue of first impression concerning First Amendment jurisprudence. Even assuming AB-86 applied to SDSU, the fact that "section [32092] shall not be construed as inferring that vaccination of school staff or pupils is a prerequisite for providing in-person instruction" is not a bar, as Plaintiff claims, to the implementation of such prerequisites. Cal. Educ. Code § 32092(d); Compl. ¶¶ 11–12. Finally, the Policy, on its face, indicates that, "[i]n the event that a federal, state, or local governing public health agency imposes a requirement that restrictively conflicts with this policy or a campus's implementation of this policy, the applicable public health mandate shall govern and be implemented." *See* Policy at IV.F. Accordingly, to the extent Plaintiff contends that the Policy is illegal due to its alleged conflict with AB-86, Plaintiff's claim lacks merit for several independently sufficient reasons.

In short, the Court finds that Plaintiff fails to state a plausible claim for declaratory and injunctive relief on multiple grounds.

### 3. Claim 4: Retaliation

"Title 42 U.S.C. § 1983 'authorizes a remedy against state actors for constitutional violations.'" *Seater*, 48 F.3d 1228 (citing *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 971 n.5 (9th Cir. 1994)). "To state a First Amendment retaliation claim, a plaintiff must plausibly allege 'that (1) he was engaged in a constitutionally protected activity, (2) the

defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.'" *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)).

Plaintiff essentially claims that, in retaliation for his complaining to SDSU about a teacher's fraudulent representations about his course's scope and the delay his late withdrawal from the class caused in his ability to pursue further classes, SDSU "started a war against plaintiff, a deliberate and malicious vendetta to keep plaintiff out of the college to punish him," by taking various actions to refuse him a 2020 internship, barring his access to his university e-mail account, fraudulently claiming that Plaintiff enrolled in a spring 2021 class that he failed to pay for to put a "hold" on Plaintiff's account, refusing to let Plaintiff drop a spring 2020 chemistry class in May 2021, and refusing Plaintiff access to his records. Compl. ¶¶ 76–79, 62. Plaintiff appears to seek only monetary damages for this claim. *See id.* ¶ 81.

As to the allegedly retaliatory acts, the vast majority are not attributed to particular individuals and instead are attributed to "SDSU" as an entity. *See id.* ¶¶ 62(a)–(d), (f)–(h), (*l*). For the reasons provided above, however, SDSU is immune from suit, and accordingly Plaintiff fails to state a retaliation claim against SDSU. *See supra* Section III.A.1.

The only conduct attributed to the named Individual Defendants is as follows: Catano created a fake "hold" on Plaintiff's account by "adjusting" his record to show that he registered for a spring 2021 class in which he did not enroll, Compl. ¶ 62(e); Catano refused Plaintiff's August 2021 request for access to his full record for the past three years, *id.* ¶ 62(i); following Catano's refusal, de la Torre refused to answer Plaintiff's demand for his records and an explanation of Catano's alleged punishment, *id.* ¶ 62(j); and Ruiz "was also sent [Plaintiff]'s request for his records and . . . had the power to provide the records, but she refused," *id.* ¶ 62(k). Plaintiff also appears to argue that he complained about the "hold" issue to de la Torre through her executive secretary on August 4, 2021, *see id.* ¶ 35, and to Castro on August 13, 2021, *see id.* ¶ 37, but that both failed to respond.

To the extent Plaintiff seeks to assert his retaliation claim against the Individual Defendants in their official capacities, for the reasons provided above, *see supra* Section III.A.1, they are immune under the Eleventh Amendment, and accordingly Plaintiff fails to state a retaliation claim as to them. The Eleventh Amendment "does not, however, bar claims for damages against state officials in their *personal* capacities." *Mitchell*, 818 F.3d at 442 (citing *Pena*, 976 F.2d at 472) (emphasis in original). "Clearly, under § 1983, a plaintiff may sue a state officer in his individual capacity for alleged wrongs committed by the officer in his official capacity." *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990). However, "[t]o state a cause of action against a defendant in his individual capacity, the plaintiff 'must allege that the defendant knew of or participated in activities connected to the alleged § 1983 violations.'" *Ortiz v. Alvarez*, 341 F. Supp. 3d 1087, 1110 (E.D. Cal. 2018) (quoting *Ortez v. Wash. Cty.*, 88 F.3d 804, 809 (9th Cir. 1996)). In other words, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680–81 (9th Cir. 1984)).

Here, Plaintiff fails to state a plausible retaliation claim against the Individual Defendants. Although, construed liberally, Plaintiff alleges that he engaged in protected activity by complaining about his teachers' supposed fraud (although Plaintiff utterly fails to allege to whom he complained, in what form, when, or any other supporting facts), *see, e.g.*, Compl. ¶ 76, Plaintiff does not adequately and plausibly allege the second two elements of his claim. As to de la Torre and Castro, Plaintiff fails to allege that they "knew of the alleged retaliation before it happened" such that they could have participated in or directed the allegedly retaliatory acts or failed to prevent them. *Spittal v. Houseman*, 224 F. App'x 725 (9th Cir. 2007) (citation omitted). As to Ruiz, Plaintiff alleges only that she

failed to provide him with his academic records when requested. See Compl. ¶ 62(k). Plaintiff has failed to allege facts that, taken as true, would establish that a person of ordinary firmness would be deterred from engaging in the at-issue constitutionally protected conduct because of this single incident or would show that Plaintiff's exercise of his free speech rights was the "but for" cause of Ruiz's actions. And while Plaintiff alleges somewhat more retaliatory conduct by Catano, see id. ¶¶ 62(e), (i), again, the allegations simply are inadequate to plausibly allege the second and third elements of a retaliation claim against her. Accordingly, the Court finds that Plaintiff fails to plead a plausible claim for retaliation against any of Defendants.

### 4. Claim 5: Equal Protection

Finally, Plaintiff alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. See Compl. ¶¶ 82–100. Again, "[s]ection 1983 authorizes a remedy against state actors for constitutional violations, including violations of the Equal Protection Clause." Cerrato, 26 F.3d at 972 (citing 42 U.S.C. § 1983). The Equal Protection Clause provides: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Plaintiff explicitly alleges that his claim is a "class-of-one" claim. See Compl. ¶ 93; Gerhart v. Lake Cty., Mont., 637 F.3d 1013, 1021 (9th Cir. 2011) ("The Supreme Court has recognized that 'an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called "class of one."'") (quoting Engquist v. Or. Dep't of Agric., 553 U.S. 591, 601 (2008)). "An equal protection claim based on a 'class of one,' which does not depend on a suspect classification such as race or gender, requires a plaintiff to allege that he has been (1) 'intentionally treated differently from others similarly situated' and (2) 'there is no rational basis for the difference in treatment.'" Williams v. Cty. of Alameda, 26 F. Supp. 3d 925, 941 (N.D. Cal. 2014) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Gerhart, 637 F.3d at 1022 (9th Cir. 2011)).

///

For the reasons provided above, to the extent Plaintiff brings this claim (1) against SDSU and (2) against the Individual Defendants in their official capacities for monetary damages, it fails because they are entitled to Eleventh Amendment immunity. *See supra* Section III.A.1.  Further, Plaintiff fails to state a claim as to either Castro or Ruiz, as Plaintiff alleges no facts concerning their participation in or knowledge of the allegedly violative acts.  *See generally* Compl.; *see also Ortiz*, 341 F. Supp. 3d at 1110 (E.D. Cal. 2018).

That leaves only Plaintiff's claims against de la Torre and Catano.  Plaintiff claims that, in the spring of 2020, de la Torre allowed all students to withdraw from their classes without adverse grades and with full refunds, despite the deadline for dropping classes having passed, because of the Covid-19 pandemic.  Compl. ¶ 85.  Plaintiff wanted to stay in his 2020 chemistry class because he was doing research to find a cure for Covid-19, so he was granted an "incomplete" grade, which he needed to complete by May 2021.  *Id.* ¶ 86.  Plaintiff applied for special lab access to complete the class, but after his "incomplete" grade had already been entered, he was informed that his request was denied because he was not a Ph.D. candidate.  *Id.* ¶¶ 86–87.  The bar on lab access was not lifted until April 2021, at which point "it was impossible to do 6 months of lab work in the remaining month."  *Id.* ¶ 88.  At that point, Plaintiff petitioned to drop the chemistry class.  *Id.*  Defendants have not informed Plaintiff that his request was denied, but Plaintiff assumes that to be the case and that he was given an "F" in the class because he has received no refund and because Plaintiff's chemistry teacher informed him that no one has contacted her to ask for a grade.  *Id.* ¶¶ 89–91.  Plaintiff alleges that Catano orchestrated this outcome to punish him for his complaint about faculty fraud in 2020.  *Id.* ¶ 89.

Although Plaintiff alleges that he "was in the exact same legal position as all other SDSU students faced with impossibility of performance due to *force majeure* or Act of God," *id.* ¶ 93, the facts alleged elsewhere in the Complaint establish otherwise.  The other, allegedly similarly situated SDSU students dropped their classes a full year earlier, in the spring of 2020, when explicitly granted an opportunity to do so and when "the COVID

pandemic closed entirely all in-person classes." *Id.* ¶ 85. Plaintiff, on the other hand, did not seek to drop his class until May 2021, after he had already taken an "incomplete" grade in the class and at a time when Covid-19 restrictions were being lifted. *See id.* ¶¶ 86, 88. Accordingly, the facts alleged in the Complaint tend to show that Plaintiff, in fact, was *not* similarly situated to the students who were permitted to withdraw late from their classes. Although "impossibility" of some variety may have been the reason for the requested withdrawals both in the spring of 2020 and in May 2021, the reasons for that "impossibility" were ultimately different. And, because Plaintiff was not similarly situated to the students who took advantage of an express opportunity to withdraw at the height of the Covid-19 pandemic, the facts alleged tend to suggest a rational basis for the allegedly differential treatment. Thus, Plaintiff also fails to plausibly allege the elements of an equal protection claim against any Defendant.

      **B.**    **State Law Claims**

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

Plaintiff also seeks to bring various California state law claims against Defendants. *See generally* Compl. Because Plaintiff has failed to allege adequately any violation of federal law, however, the Court exercises its discretion to dismiss his pendent state law claims without prejudice. 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . [it] has dismissed all claims over which it has original jurisdiction."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Acri*, 114 F.3d at 1000.

### C. Leave to Amend

For the above-mentioned reasons, the Court finds Plaintiff's Complaint fails to state any claim upon which relief can be granted and that the Complaint must be dismissed *sua sponte* and in its entirety pursuant to 28 U.S.C. § 1915A(b)(1). Because Plaintiff is proceeding pro se, the Court, having now provided him with "notice of the deficiencies in his complaint," will also grant him an opportunity to fix them. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

### MOTION FOR TEMPORARY RESTRAINING ORDER

Federal Rule of Civil Procedure 65(b) governs the issuance of a temporary restraining order ("TRO"). The standard for a TRO is identical to the standard for a preliminary injunction. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Worker's Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). A plaintiff seeking preliminary relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and is "never awarded as a matter of right." *Id.* at 22, 24. "Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, [the court] need not consider the remaining three [*Winter* elements]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (citing *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (internal quotation marks omitted).

When a plaintiff has not provided notice of his application to the defendant, Federal Rule of Civil Procedure 65(b)(1) imposes specific requirements prior to the issuance of a TRO. Namely:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). "The stringent restrictions imposed . . . by Rule 65[ ] on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438–39 (1974) (footnote omitted). Accordingly, "courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). "For example, an ex parte TRO may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Id.* (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). Alternatively, "[i]n cases where notice could have been given to the adverse party, courts have recognized a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Id.* (quoting *Am. Can Co.*, 742 F.3d at 322).

Here, because Plaintiff's Complaint has not survived screening, Plaintiff has failed to establish a likelihood of success on the merits. *See Keavney v. O'Brien*, No. 3:20CV1443-MMA-MSB, 2020 WL 7318120, at *5 (S.D. Cal. Dec. 11, 2020) ("[B]ecause the Court found that Plaintiff's Complaint failed to state a claim upon which Section 1983 relief may be granted, he has failed to demonstrate for purposes of preliminary injunctive relief a likelihood of success on the merits.") (citing *Thomas v. Chu*, No. 3:20-cv-00245-GPC-BGS, 2020 WL 5408944, at *10 (S.D. Cal. Sept. 9, 2020)). Nor does it appear that Plaintiff has complied with the stringent notice certification requirements of Federal Rule

/ / /

of Civil Procedure 65(b)(1) for issuance of an ex parte TRO. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's TRO Motion.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's IFP Motion (ECF No. 2), **DISMISSES** Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2) **WITH LEAVE TO AMEND** (ECF No. 1), and **DENIES WITHOUT PREJUDICE** Plaintiff's TRO Motion (ECF No. 3). The Court grants Plaintiff <u>forty-five (45) days</u> from the date on which this Order is electronically docketed in which to file an amended complaint curing the deficiencies of pleading noted herein. Should Plaintiff fail to file an amended complaint in accordance with this Order, the Court will enter a final order dismissing this civil action without prejudice based on Plaintiff's failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: August 23, 2021

Hon. Janis L. Sammartino
United States District Judge